**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| EVIANA LUKES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Eviana Lukes ("Ms. Lukes" or "Plaintiff") brings this Complaint against Defendant Wal-Mart Stores East, LP ("Defendant" or "Wal-Mart") and sets forth the following claims:

## INTRODUCTION

1.     Ms. Lukes began working as a cashier for Wal-Mart on April 1, 2016. During her employment, Ms. Lukes was a dedicated and responsible employee.

2.     Ms. Lukes suffers from Multiple Sclerosis ("MS"). Ms. Lukes' condition constitutes a disability as defined by the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.,* and a serious health condition under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

3.     After being diagnosed with MS, Ms. Lukes sought to continue working as a cashier and requested an accommodation that would allow her to sit on a stool while cashiering. However, Wal-Mart refused to accommodate her request, leaving Ms. Lukes without an opportunity to work. Ms. Lukes was then unlawfully terminated.

4.     Ms. Lukes asserts claims against Defendant for discrimination, failure to accommodate, and retaliation under the ADAAA, and a claim for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

5.     Ms. Lukes seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, punitive damages, liquidated damages, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

6.     Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

7.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because Defendant conducts business in the State of Georgia and within the Northern District of Georgia.

8.     Venue is also proper in this district and division pursuant to 28 U.S.C.

§ 1391(b)(2) because a substantial part of the events and omissions giving rise to this Complaint occurred within the Northern District of Georgia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Ms. Lukes satisfied all administrative prerequisites to perfect her claims under the ADAAA. Specifically, Ms. Lukes timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

10.     Ms. Lukes brings this suit within ninety (90) days of receipt of her notice of right to sue.

## THE PARTIES

11.     Ms. Lukes is a resident of the State of Florida.

12.     Ms. Lukes is an "eligible employee" within the meaning of the FMLA in that she had been employed with Defendant for more than twelve months and worked more than 1,250 hours per year.

13.     Ms. Lukes, at all relevant times to this action, was an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

14.     Ms. Lukes was a person with a disability because she had an actual physical impairment substantially limiting one or more major life activities, because she had a record of impairment, and because she was regarded as having an

3

impairment.

15.    Wal-Mart is subject to the jurisdiction and venue of this Court.

16.    Upon information and belief, Wal-Mart is a Delaware corporation, with its principal place of business located at 702 SW 8th Street, Bentonville, AK, 72716.

17.    Defendant is a covered employer under the ADAAA, as it employs more than fifteen people.

18.    Defendant is also a covered employer under the FMLA, as it had more than fifty employees within a seventy-five-mile radius in each of twenty or more consecutive calendar weeks in the current or preceding year within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

19.    At all times relevant to this action, Ms. Lukes was an "employee" of Wal-Mart under the ADAAA, 42 U.S.C. § 12101 *et seq*. and FMLA, 29 U.S.C. § 2601 *et seq*.

20.    Defendant may be served with process by delivering a copy of Summons and Complaint to its registered agent, The Corporation Company (FL), 106 Colony Park Drive, Suite 800-B, Cumming, GA, 30040-2794, for service of process.

## STATEMENT OF FACTS

21.    Ms. Lukes began working as a cashier for Wal-Mart in Florida City, Florida on April 21, 2016.

22.     In May 2019, Ms. Lukes moved to Georgia and transferred to work as a cashier at the Wal-Mart located at 8424 Mall Parkway, Stonecrest, Georgia.

### Ms. Lukes' Disability and Leave

23.     In October 2019, Ms. Lukes began experiencing pain in her legs, difficulty balancing, and dizziness while at work.

24.     Ms. Lukes approached her direct supervisor, Store Manager Tashika Weatherspoon, about her health concerns.

25.     Ms. Weatherspoon advised Ms. Lukes to file for a leave of absence and figure out what was wrong.

26.     Ms. Lukes completed a leave of absence request with Sedgwick, a third-party administrator that handles Wal-Mart's leave requests.

27.     In the following few weeks, Ms. Lukes' symptoms worsened, and she was hospitalized. At the hospital, she was diagnosed with MS.

28.     MS is a disease of the brain and spinal cord, whereby the immune system causes communication problems between one's brain and the rest of the body. Symptoms vary widely from person to person and vary over the course of the disease. Symptoms can include numbness or weakness in the limbs, electric-shock sensations with movement, lack of coordination or mobility, problems with vision, fatigue, dizziness, slurred speech, and more. Most individuals diagnosed with MS,

however, have a "relapsing-remitting" disease course, meaning that they experience symptomatic periods that can last days or weeks, followed by quiet periods of remission that can last months or even years. As such, the effects of the disease are unpredictable in their time and duration.

29.     After her diagnosis, Ms. Lukes began adjusting to her new normal life with MS.

30.     As quickly as she could, Ms. Lukes obtained medical paperwork from her doctor and submitted it to Wal-Mart through the Sedgwick App to utilize medical leave.

31.     Sedgwick notified Ms. Lukes that she was approved for FMLA leave from October 25, 2019 through November 14, 2019.

32.     In mid-November 2019, Ms. Lukes attempted to return to work. She went into the store and told her supervisor and Store Manager, Ms. Weatherspoon, that she was ready to be placed back on the schedule.

33.     Ms. Weatherspoon, however, told Ms. Lukes that she could not return to work.

34.     Ms. Weatherspoon specifically referenced Ms. Lukes' medical paperwork and diagnosis.

35.     Ms. Lukes protested, and then requested an accommodation: she asked

to sit on a stool behind the register if her legs grew tired or numb, because of her disability.

36.     Ms. Lukes explained that she could be just as effective a cashier when sitting on a stool.

37.     Ms. Weatherspoon then reiterated to Ms. Lukes that Wal-Mart could not accommodate her disability and would not provide her requested stool accommodation.

38.     Since Wal-Mart did not allow her to work, Ms. Lukes left the store.

### Ms. Lukes' Request to Return

39.     In January 2020, Ms. Lukes again attempted to return to work at Wal-Mart, and again spoke with her supervisor and Store Manager, Ms. Weatherspoon, about being placed back on the schedule.

40.     To Ms. Lukes' surprise, Ms. Weatherspoon told her that she was no longer in the Wal-Mart system and that she had been fired.

41.     Neither Wal-Mart nor Sedgwick had notified Ms. Lukes that it terminated her employment.

42.     Ms. Lukes then asked Ms. Weatherspoon if she could return to work in the same position as a cashier, thereby effectively requesting that Ms. Weatherspoon re-hire her.

43.    Ms. Weatherspoon told Ms. Lukes that although there was a position available, Ms. Lukes could not come back to work unless she provided a new doctor's note that indicated that she had no longer had any physical limitations whatsoever.

44.    Ms. Lukes explained to Ms. Weatherspoon that she could still do her job as a cashier and again mentioned the stool accommodation.

45.    Ms. Weatherspoon again denied the stool request and explained that because of her disability, Ms. Lukes could no longer work at Wal-Mart.

## COUNT ONE
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

46.    Ms. Lukes incorporates paragraph numbers 1 through 45 of the Complaint.

47.    At all relevant times, Ms. Lukes was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

48.    Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

49.     Defendant intentionally discriminated against Ms. Lukes by subjecting her to adverse employment actions including, but not limited to, denying her reasonable accommodations, denying her request to return to work, and terminating her employment, because of her disability.

50.     Defendant violated Plaintiff's rights under the ADAAA, 42 U.S.C. § 12112, by discriminating against her because of her disability.

51.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be established at trial.

52.     Defendant's actions have caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

53.     Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

54.     Plaintiff is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost

wages and benefits of employment.

## COUNT TWO
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

55.     Ms. Lukes incorporates paragraphs 1 through 45 of the Complaint.

56.     At all relevant times, Ms. Lukes was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

57.     Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

58.     Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, failing and refusing to engage in the interactive process, denying her reasonable accommodations, denying her request to return to work, and terminating her employment.

59.     By denying Ms. Lukes' reasonable accommodation request and instead terminating her employment, Defendant discriminated against Ms. Lukes because of her disability and violated her rights under the ADAAA, 42 U.S.C. §

12112(5)(A).

60.     As a direct and proximate result of Defendant's intentional discrimination, Ms. Lukes has suffered out of pocket losses and has been deprived of job-related economic benefits, including but not limited to income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be established at trial.

61.     Defendant's actions have caused and will continue to cause Ms. Lukes to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

62.     Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Ms. Lukes' federally protected rights, and she is therefore entitled to punitive damages.

63.     Ms. Lukes is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT THREE
## RETALIATION IN VIOLATION OF THE ADAAA

64.     Ms. Lukes incorporates by reference paragraphs 1 through 45 of the Complaint.

65.     At all relevant times, Ms. Lukes was an individual with a "disability"

as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

66.    Ms. Lukes was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without reasonable accommodation.

67.    Ms. Lukes engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy her rights under the ADAAA, including but not limited to, requesting a reasonable accommodation for her disability.

68.    Defendant subjected Ms. Lukes to adverse employment actions including, but not limited to, denying her requests for reasonable accommodations, denying her request to return to work, and terminating his employment, among other things, because she engaged in statutorily protected activity under the ADAAA.

69.    Defendant's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. §

12203(a), and also prohibits employers from interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

70.     As a direct and proximate result of Defendant's unlawful retaliation against Ms. Lukes, she has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, bonuses, and other benefits, including health insurance and social security, all in an amount to be established at trial.

71.     Defendant's actions have caused, continue to cause, and will cause Ms. Lukes to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

72.     Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Ms. Lukes' federally protected rights, and she is therefore entitled to punitive damages.

73.     Ms. Lukes is entitled to be reinstated to employment by Defendant, and, if reinstatement is not feasible, she is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT FOUR
## RETALIATION IN VIOLATION OF THE FMLA

74.     Ms. Lukes incorporates by reference paragraphs 1 through 45 of the Complaint.

75.     Ms. Lukes was an eligible employee within the meaning of the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113.

76.     Defendant intentionally discriminated against Ms. Lukes by terminating her in retaliation for her exercise of FMLA rights.

77.     Defendant retaliated against Ms. Lukes for her use of protected FMLA leave and anticipated use of protected leave and for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2), by terminating her employment to avoid providing her with FMLA leave at the time and in the future, and terminating her employment for absences legally covered by the FMLA.

78.     Defendant's actions in retaliation for Ms. Lukes' exercise of her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2).

79.     The effect of Defendant's actions has been to deprive Ms. Lukes of a job, as well as income in the form of wages, bonuses, health insurance, prospective

retirement benefits, social security, and other benefits due her solely because of the exercise of her rights under the FMLA.

80.　As a result, Ms. Lukes is entitled to both equitable and monetary relief for the Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

81.　Ms. Lukes is also entitled to liquidated damages for the Defendant's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Lukes demands a **TRIAL BY JURY** and that the following relief be granted:

A.　That this Court take jurisdiction of this matter;

B.　That process be served;

C.　That Ms. Lukes be awarded a declaratory judgment that Defendant violated the ADAAA and the FMLA;

D.　That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA and the FMLA;

E.　That the Court award Ms. Lukes back pay and all benefits, privileges,

and rights previously denied;

F.      That the Court order that Ms. Lukes be reinstated or, in the alternative, be awarded front pay;

G.      That the Court award Ms. Lukes liquidated, compensatory, and punitive damages in an amount to be determined by the trier of fact;

H.      That the Court award Ms. Lukes her costs in this action and reasonable attorneys' fees;

I.      That the Court grant to Ms. Lukes the right to have a trial by jury on all issues triable to a jury; and

J.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 20th day of April, 2021.

**BUCKLEY BEAL, LLP**

By:     _/s/ Rachel Berlin Benjamin_
        Rachel Berlin Benjamin
        Georgia Bar No. 707419
        rberlin@buckleybeal.com
        Alessandra T. Palazzolo
        Georgia Bar No. 485399
        apalazzolo@buckleybeal.com
        600 Peachtree Street, NE
        Suite 3900
        Atlanta, GA 30308
        Telephone: (404) 781-1100

Facsimile: (404) 781-1101
*Counsel for Plaintiff*